# EXHIBIT 1

## IN THE CIRCUIT COURT OF McMINN COUNTY
## AT ATHENS, TENNESSEE

STEPHEN EIMERS, as Personal
Representative of the Estate of HANNAH
EIMERS, Deceased

           Plaintiff,

vs.

VALMONT INDUSTRIES, INC., a foreign
corporation; VALMONT HIGHWAY, a
foreign corporation; ARMORFLEX
INTERNATIONAL LIMITED, a foreign
corporation; LINDSAY CORPORATION, a
foreign corporation; LINDSAY
TRANSPORTATION SOLUTION SALES &
SERVICE LLC, a foreign corporation;
BARRIER SYSTEMS, INC., a foreign
corporation; and REYNOLDS FENCE &
GUARDRAIL, INC., a foreign corporation,

           Defendants.

CASE NO.: 2019-CV-27

JURY DEMANDED

FILED

JAN 2 4 2019

RHONDA J. COOLEY
CIRCUIT COURT CLERK
BY_____D.C.

## **COMPLAINT**

Plaintiff, STEPHEN EIMERS, as Personal Representative of the Estate of HANNAH

EIMERS, deceased, now appears, by and through counsel, in this case, which arises out of the

injuries and wrongful death suffered by HANNAH EIMERS in a traffic collision on November

1, 2016, in McMinn County, Tennessee, on account of the wrongful and negligent conduct by

and/or attributable to the Defendants herein; for cause of action against these Defendants,

Plaintiff states the following contentions:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff STEPHEN EIMERS is a citizen and resident of Lenoir City, Loudon County, Tennessee, residing at 590 Old Greenback Road, Lenoir City, Tennessee 37772.

2.      Hannah Eimers, deceased, was the natural daughter of Stephen Eimers and Melissa Eimers.  Hannah was born on September 11, 1999, and died on November 1, 2016.

3.      STEPHEN EIMERS, as a surviving parent of Hannah Eimers, deceased, is duly appointed as the Personal Representative of her Estate.  (Letter of Administration is attached hereto as "Exhibit A.")

4.      The potential beneficiaries of the Estate of Hannah Eimers in this wrongful death action and the relationship of each to the decedent are as follows:

a.      Stephen Eimers, surviving parent;

b.      Melissa Eimers, surviving parent; and

c.      The Estate of Hannah Eimers.

5.      Defendant VALMONT INDUSTRIES, INC., organized in the State of Nebraska, which at all relevant times was doing business in the jurisdiction of this Honorable Court. Valmont Industries is a foreign for-profit corporation organized and existing under the laws of Nebraska with its principal place of business at One Valmont Plaza, Omaha, Nebraska 68154-5215.  Valmont Industries is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Valmont Industries transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Valmont Industries

while, at or about the time of the injury, Valmont Industries was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Valmont Industries were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Valmont Industries derived substantial revenue. (T. C. A. § 20-2-223)

6. In 2013, Defendant Valmont Industries acquired Defendant Armorflex International Limited and its products, including the X-LITE guardrail end terminals involved in the accident at issue in this lawsuit. This acquisition amounted to a merger or de facto merger wherein liability for defects associated with the Subject Guardrail system was assumed by Valmont.

7. Valmont Industries designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and/or participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Valmont Industries uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

8. Defendant VALMONT HIGHWAY, a subsidiary of Valmont Industries, Inc., is a foreign for-profit corporation organized and existing under the laws of Australia with its principal place of business at 57-65 Airds Road, Minto NSW 2566 Australia. Valmont Highway is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Valmont Highway transacting business in Tennessee or contracting to supply services or things in

Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Valmont Highway while, at or about the time of the injury, Valmont Highway was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Valmont Highway were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Valmont Highway derived substantial revenue. (T. C. A. § 20-2-223)

9.     Valmont Highway designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and/or participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Valmont Highway uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

10.     Defendant ARMORFLEX INTERNATIONAL LIMITED ("hereinafter Armorflex"), a subsidiary of Valmont Industries, Inc., is a foreign for-profit corporation organized and existing under the laws of New Zealand with its principal place of business at 8 Paul Matthew Road, Auckland 0632, New Zealand. Armorflex was acquired by Valmont Industries Inc. in 2013. Armorflex is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Armorflex transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Armorflex

while, at or about the time of the injury, Armorflex was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Armorflex were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Armorflex derived substantial revenue. (T. C. A. § 20-2-223)

11.    Armorflex designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Armorflex uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median. Armorflex holds the patent on the X-LITE.

12.    Defendant LINDSAY CORPORATION (hereinafter "Lindsay Corp") is a foreign corporation organized in the State of Delaware which at all relevant times was doing business in the jurisdiction of this Honorable Court. Lindsay Corp's principal place of business is located at 222 North 111th Street, Omaha, Nebraska 68164. Lindsay Corp is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Lindsay Corp transacting business in Tennessee or contracting to supply services or things in Tennessee; committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Lindsay Corp while, at or about the time of the injury, Lindsay Corp was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Lindsay Corp were used or consumed within

Tennessee in the ordinary course of commerce, trade, or use, for which Lindsey Corp derived substantial revenue. (T. C. A. § 20-2-223)

13.     Lindsay Corporation designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Lindsay Corp uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median. Lindsay Corp holds the license and the trademark to the patented X-LITE.

14.     Defendant LINDSAY TRANSPORTATION SOLUTIONS SALES & SERVICE, INC. (hereinafter "Lindsay TSSS") is a foreign corporation, organized in the State of California, and is a directly and/or indirectly wholly owned subsidiary and/or operational unit or division of Lindsay Corp, which at all relevant times was doing business in the jurisdiction of this Honorable Court. Lindsay TSSS's principal place of business is located at 180 River Road, Rio Vista, California 94571. Lindsay TSSS is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Lindsay TSSS transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Lindsay TSSS while, at or about the time of the injury, Lindsay TSSS was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Lindsay TSSS were used or consumed within Tennessee in the

ordinary course of commerce, trade, or use, for which Lindsey Corp derived substantial revenue.
(T. C. A. §20-2-223).

15.     Lindsay TSSS designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal.   Lindsay TSSS uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

16.     Defendant BARRIER SYSTEMS, INC., (hereinafter "Barrier Systems") is a foreign corporation, organized in the State of California, and is a wholly owned subsidiary and/or operational unit or division of Lindsay Corp or Lindsay TSSS, which at all relevant times was doing business in the jurisdiction of this Honorable Court.  Barrier Systems' principal place of business is located at 180 River Road, Rio Vista, California 94571.  Barrier Systems is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Barrier Systems transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Barrier Systems while, at or about the time of the injury, Barrier Systems was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Barrier Systems were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Barrier Systems derived substantial revenue.  (T. C. A. § 20-2-223).

17.     Barrier Systems designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail terminals in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

18.     Defendant REYNOLDS FENCE & GUARDRAIL, INC. [hereinafter "Reynolds"] is a foreign corporation, organized in the State of North Carolina, which at all relevant times was doing business in the jurisdiction of this Honorable Court. Reynolds' principal place of business is located at 9320 Machado Drive, Indian Trail, North Carolina 28079-7718. Reynolds is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Reynolds transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Reynolds while, at or about the time of the injury, Reynolds was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Reynolds were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Reynolds derived substantial revenue.   (T. C. A. § 20-2-223).

19.     Reynolds maintains, inspects, and/or installs guardrail terminals and end terminals in Tennessee, including the Subject Guardrail and end terminal.

20.     VALMONT INDUSTRIES, INC.; VALMONT HIGHWAY; ARMORFLEX INTERNATIONAL LIMITED; LINDSAY CORPORATION; LINDSAY TRANSPORTATION

SOLUTIONS SALES & SERVICE, LLC; and BARRIER SYSTEMS are referred to as collectively "Lindsay" or "Lindsay Defendants."

21.     Jurisdiction and venue are proper in this Honorable Court because McMinn County is the county in which the subject accident giving rise to this Complaint took place.

## ALLEGATIONS COMMON TO ALL COUNTS

22.     On or about November 1, 2016, on Interstate 75 near mile marker 55.90 in McMinn County, Tennessee, Hannah Eimers was the seat belted driver of 2000 Volvo S80, Vehicle Identification Number ("VIN") YV1TS94D6Y1141986, Tennessee License Number S6009N.

23.     At that time and place, the 2000 Volvo was traveling northbound on I-75, within the speed limit, when it left the roadway off the left shoulder and immediately thereafter, the Volvo collided with the X-LITE guardrail end terminal ("Subject Guardrail") that bordered I-75.

24.     During the collision, the X-LITE end terminal and rail system failed to perform its intended safety function and purpose due to a defect(s) with its design, manufacturing, and/or warnings. . Specifically, the X-LITE guardrail failed to properly perform/telescope upon impact. As a result, when the X-LITE end terminal was impacted by the Volvo, it was not able to maintain its integrity and stop the W-beams, thus allowing the W-beams to pierce through the Volvo's exterior and frame, and enter its driver's side occupant compartment and puncture all the way through into the rear passenger side door.

25.     During the collision, the W-beams penetrated the occupant compartment of the vehicle where Hannah Eimers was sitting, and violently struck her, causing her to suffer

immediate, horrible, and agonizing pain, severe damage to her internal organs, internal bleeding, hemorrhaging, multiple fractures, and ultimately death.

26.     Hannah was properly licensed, well rested, very familiar with her vehicle, not under the influence of any alcohol or drugs, was not exceeding the speed limit, and was not talking or texting on her phone at the time of the accident.

27.     In the alternative, the X-LITE guardrail failed to perform as intended during the collision because it was improperly installed by Reynolds due to the Lindsay Defendants' failure to provide adequate installation and/or maintenance instructions.

## COUNT I – NEGLIGENCE AGAINST THE LINDSAY DEFENDANTS

28.     Plaintiff hereby incorporates by reference previous paragraphs 1 through 27 as if fully set forth herein.

29.     The Lindsay Defendants owed a duty of reasonable care in the design development, testing, manufacture, assembly, inspection, marketing, distribution, promotion, training, advertisement and sale of the Subject Guardrail so as to avoid exposing Plaintiff to unnecessary and unreasonable risks.

30.     The Lindsay Defendants breached that duty in one or more of the following ways:

    a. By negligently failing to use due care in the design, development, manufacture, assembly, testing, inspection, marketing, promotion, training, distribution, advertising, sale, or processing of the Subject Guardrail and its component parts, in order to avoid the aforementioned risks to individuals;

    b. By failing to adequately warn foreseeable purchasers, installers, and end users of the unreasonable dangerous and defective condition(s) of the X-LITE end

terminal, despite the fact that they knew or should have known of the unreasonably dangerous condition(s);

c. By failing to disclose known problems and defects;

d. By marketing the X-LITE as safe;

e. By failing to adequately provide proper and clear installation, repair, maintenance, and/or instruction manuals, and failing to provide adequate warnings;

f. By failing to comply with reasonable and necessary guidelines, including those of the Department of Transportation, the Federal Highway Administration, and/or the National Cooperative Highway Research Program (NCHRP);

g. By failing to design and/or manufacture the X-LITE end terminal according to the specifications and approved by the Department of Transportation, the Federal Highway Administration, and/or the NCHRP;

h. By failing to make timely corrections to the design of the Subject Guardrail to correct the guardrail system;

i. By failing to adequately identify and mitigate the hazards associated with the guardrail system in accordance with good engineering practices;

j. By failing to adequately test the Subject Guardrail system, including the head and rail system, to ensure it provided foreseeable owners and passengers of the motoring public with reasonable safety in foreseeable impacts;

k.  By manipulating, misrepresenting, and/or concealing testing data pertaining to the Subject Guardrail system;

l.  By failing to disclose known problems and defects;

m.  By failing to meet or exceed internal corporate guidelines;

n.  By failing to recall the guardrail system or, alternatively, retrofitting the guardrail system to provide reasonable safety for the motoring public; and

o.  By failing to recall the X-LITE end terminal to enhance safety.

31.  As a direct and proximate result of the Lindsay Defendants' negligence, Hannah Eimers suffered fatal injuries and the Defendants are responsible for her death and damages as set forth below:

a.  Stephen Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law;

b.  Melissa Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law; and

c.  The Estate of Hannah Eimers has lost prospective net accumulations and has incurred medical and funeral expenses due to the decedent's injury and death.

WHEREFORE, Plaintiff, STEPHEN EIMERS, as the Personal Representative of the Estate of HANNAH EIMERS, deceased, demands a jury of twelve to try the issues set forth

herein and further requests that this Court allow a fair and reasonable judgment not to exceed the amount of Five Million Dollars ($5,000,000.00), exclusive of any claim for punitive damages, for all compensatory damages and costs against the Defendants available by law.

### COUNT II - STRICT LIABILITY AGAINST THE LINDSAY DEFENDANTS

32.      Plaintiff hereby incorporates by reference previous paragraphs 1 through 31 as if fully set forth herein.

33.      This is a Count for strict liability against the Lindsay Defendants.

34.      At all times material to this cause of action, the Lindsay Defendants were in the business of, and gained profits from, the design development, testing, manufacture, assembly, inspection, marketing, distribution, promotion, advertisement, and/or sale of X-LITE guardrail system through the stream of commerce.

35.      At all times material to this cause of action, the Subject Guardrail system was unreasonably dangerous and defective because:

      a.  The Lindsay Defendants failed to use due care in the design, development, manufacture, assembly, testing, inspection, marketing, promotion, distribution, advertising, sale, and/or processing of the Subject Guardrail and its component parts, in order to avoid the aforementioned risks to individuals;

      b.  The Lindsay Defendants failed to adequately warn foreseeable purchasers, installers, and end users of the unreasonable dangerous and defective condition(s) of the X-LITE end terminal, despite the fact that they knew or should have known of the unreasonably dangerous condition(s);

      c.  The Lindsay Defendants failed to disclose known problems and defects;

d.  The Lindsay Defendants marketed the X-LITE as safe;

e.  The Lindsay Defendants failed to adequately provide proper and clear installation, maintenance, and repair instruction manuals, and failed to provide adequate warnings;

f.  The Lindsay Defendants failed to comply with reasonable and necessary guidelines, including those of the Department of Transportation, the Federal Highway Administration, and the NCHRP;

g.  The Lindsay Defendants failed to design and/or manufacture the X-LITE end terminal according to the specifications and approved by the Department of Transportation, the Federal Highway Administration, and/or the NCHRP;

h.  The Lindsay Defendants failed to make timely corrections to the design of the Subject Guardrail to correct the guardrail system;

i.  The Lindsay Defendants failed to adequately identify and mitigate the hazards associate with the guardrail system in accordance with good engineering practices;

j.  The Lindsay Defendants failed to adequately test the Subject Guardrail system, including the head and rail system to ensure it provided foreseeable owners and passengers of the motoring public with reasonable safety in foreseeable impacts;

k.  The Lindsay Defendants manipulated, misrepresented, and/or concealed testing data pertaining to the Subject Guardrail system;

l.  The Lindsay Defendants failed to disclose known problems and defects;

m.  The Lindsay Defendants failed to meet or exceed internal corporate guidelines;

n. The Lindsay Defendants failed to recall the guardrail system or, alternatively, retrofit the guardrail system to provide reasonable safety for the motoring public; and

o. The Lindsay Defendants failed to recall the X-LITE end terminal to enhance safety.

36.    The Lindsay Defendants designed, developed, manufactured, assembled, tested, inspected, marketed, promoted, distributed, advertised, sold, and/or processed the guardrail system and/or its component parts that is the subject of this litigation with unintended and unreasonably dangerous defects, which unintended and unreasonably dangerous defects were present in the guardrail system and/or its component parts when the Defendants placed the guardrail system and/or its component parts into the stream of commerce.

37.    The Subject Guardrail did not undergo any material change or alteration from the time of sale through, up to and including, the time of the aforementioned crash.

38.    As a direct and proximate result of the Lindsay Defendants' negligence, Hannah Eimers suffered fatal injuries and the Defendants are responsible for her death and damages as set forth below:

a. Stephen Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law;

b. Melissa Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of

society and companionship, and all other damages and expenses allowed under Tennessee law; and

c. The Estate of Hannah Eimers has lost prospective net accumulations and has incurred medical and funeral expenses due to the decedent's injury and death.

WHEREFORE, Plaintiff, STEPHEN EIMERS, as the Personal Representative of the Estate of HANNAH EIMERS, deceased, demands a jury of twelve to try the issues set forth herein and further requests that this Court allow a fair and reasonable judgment not to exceed the amount of Five Million Dollars ($5,000,000.00), exclusive of any claim for punitive damages, for all compensatory damages and costs against the Defendants available by law.

## COUNT III: NEGLIGENCE OF REYNOLDS

39.     Plaintiff hereby incorporates by reference previous paragraphs 1 through 27 as if fully set forth herein.

40.     Defendant Reynolds contracted with the Tennessee Department of Transportation ("TDOT") to complete TDOT projects of adding, installing, inspecting, maintaining, repairing, replacing, and/or overseeing the Subject Guardrail on I-75 in McMinn County, Tennessee.

41.     Reynolds had a duty to properly install, inspect, maintain, repair, monitor, and/or oversee such projects in a manner so as to protect individuals such as Hannah Eimers from unnecessary and unreasonable risks.

42.     Reynolds knew or should have known by the exercise of reasonable care that the Guardrail was not properly installed and secured such that upon impact at highway speed, it would separate allowing for a failure of the Guardrail system and thus allow intrusion of the guardrail into the subject vehicle.

43.     Reynolds breached its duty in one of more of the following ways:

a. Failing to properly install, construct, maintain, repair, monitor, and/or inspect the subject Guardrail/X-LITE end terminal;

b. Failing to discover the hazardous and unsafe condition of the Subject Guardrail/X-LITE end terminal;

c. Failing to correct the hazardous and unsafe condition of the Subject Guardrail/ X-LITE end terminal; and

d. Failing to ensure its agents, subcontractors, and/or employees properly installed, constructed, maintained, repaired and/or inspected the Subject Guardrail/X-LITE end terminal.

44.     Reynolds's acts and/or omissions created an unreasonable risk of injuries to vehicle occupants and the motoring public, including Hannah Eimers.

45.     As a direct and proximate result of Reynolds's negligence, Hannah Eimers suffered fatal injuries and the Defendant is responsible for her death and damages as set forth below:

a. Stephen Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law;

b. Melissa Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of

society and companionship, and all other damages and expenses allowed under Tennessee law, and

   c.  The Estate of Hannah Eimers has lost prospective net accumulations and has incurred medical and funeral expenses due to the decedent's injury and death.

WHEREFORE, Plaintiff, STEPHEN EIMERS, as the Personal Representative of the Estate of HANNAH EIMERS, deceased, demands a jury of twelve to try the issues set forth herein and further requests that this Court allow a fair and reasonable judgment not to exceed the amount of Five Million Dollars ($5,000,000.00), exclusive of any claim for punitive damages, for all compensatory damages and costs against the Defendants available by law.

RESPECTFULLY SUBMITTED on January 04, 2019.

Justin G. Day, Esq. (BPR No. 033267)
Gregory F. Coleman, Esq. (BPR No. 14092)
Adam A. Edwards, Esq. (BPR No. 23253)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
F: (865) 522-0049
E: justin@gregcolemnlaw.com
E: greg@gregcolemanlaw.com
E: adam@gregcolemanlaw.com

and

Theodore J. Leopold, Esq. (FL Bar No. 705608)
*Pro Hac Vice Forthcoming*
Leslie M. Kroeger, Esq. (FL Bar No. 989762)
*Pro Hac Vice Forthcoming*
Poorad Razivi, Esq. (FL Bar No. 0022876)
*Pro Hac Vice Forthcoming*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200

Palm Beach Gardens, FL  33410
T:  (561) 515-1400
F:  (561) 515-1401
E:  tleopold@cohenmilstein.com
E:  lkroeger@cohenmilstein.com
E:  prazavi@cohenmilstein.com

*Attorneys for Plaintiff*

## COST BOND

    I, the undersigned, pursuant to T.C.A.§ 20-12-125, acknowledge myself as surety for amounts required by law or included in the Clerk's bill of costs in this cause.

GREG COLEMAN LAW, P.C.

By: _____
Justin G. Day, Esq.