## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

STEPHEN EIMERS, as Personal
Representative of the Estate of HANNAH
EIMERS, deceased,

              Plaintiff,

v.

VALMONT INDUSTRIES, INC., a foreign
corporation; VALMONT HIGHWAY, a foreign
corporation; ARMORFLEX INTERNATIONAL
LIMITED, a foreign corporation; LINDSAY
CORPORATION, a foreign corporation;
LINDSAY TRANSPORTATION SOLUTIONS
SALES & SERVICE LLC, a foreign company;
LINDSAY TRANSPORTATION SOLUTIONS,
INC., f/k/a BARRIER SYSTEMS, INC., a foreign
corporation; and REYNOLDS FENCE &
GUARDRAIL, INC., a foreign corporation,

              Defendants.

_____/

Case No. 1:19-cv-00044-TRM-SKL

JURY DEMANDED

### **FIRST AMENDED COMPLAINT**

Plaintiff, STEPHEN EIMERS, as Personal Representative of the Estate of

HANNAH EIMERS, deceased, now appears, by and through counsel, in this case,

which arises out of the injuries and wrongful death suffered by HANNAH EIMERS in a

traffic collision on November 1, 2016, in McMinn County, Tennessee, on account of the

wrongful and negligent conduct by and/or attributable to the Defendants herein; for

cause of action against these Defendants, Plaintiff states the following contentions:

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile: (561) 515-1401*

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff STEPHEN EIMERS is a citizen and resident of Lenoir City, Loudon County, Tennessee, residing at 590 Old Greenback Road, Lenoir City, Tennessee 37772.

2.      Hannah Eimers, deceased, was the natural daughter of Stephen Eimers and Melissa Eimers.  Hannah was born on September 11, 1999 and died on November 1, 2016.

3.      STEPHEN EIMERS, as the surviving parent of Hannah Eimers, deceased, is duly appointed as the Personal Representative of her Estate.   (Letter of Administration is attached hereto as "Exhibit A.")

4.      The potential beneficiaries of the Estate of Hannah Eimers in this wrongful death action and the relationship of each to the decedent are as follows:

a.      Stephen Eimers, surviving parent;

b.      Melissa Eimers, surviving parent; and

c.      The Estate of Hannah Eimers.

5.      Defendant VALMONT INDUSTRIES, INC., organized in the State of Nebraska, which at all relevant times was doing business in the jurisdiction of this Honorable Court.  Valmont Industries is a foreign for-profit corporation organized and existing under the laws of Nebraska with its principal place of business at One Valmont Plaza, Omaha, Nebraska 68154-5215.  Valmont Industries is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Valmont

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 2 of 30   PageID #: 383

Industries transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Valmont Industries while, at or about the time of the injury, Valmont Industries was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Valmont Industries were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Valmont Industries derived substantial revenue. (T. C. A. § 20-2-223)

6.     In 2013, Defendant Valmont Industries acquired Defendant Armorflex International Limited and its products, including the X-LITE guardrail end terminals involved in the accident at issue in this lawsuit. This acquisition amounted to a merger or de facto merger wherein liability for defects associated with the Subject Guardrail system was assumed by Valmont.

7.     Valmont Industries designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and/or participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Valmont Industries uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

8.     Defendant VALMONT HIGHWAY, a subsidiary of Valmont Industries, Inc., is a foreign for-profit corporation organized and existing under the laws of Australia with

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 3 of 30   PageID #: 384

its principal place of business at 57-65 Airds Road, Minto NSW 2566 Australia. Valmont Highway is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Valmont Highway transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Valmont Highway while, at or about the time of the injury, Valmont Highway was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Valmont Highway were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Valmont Highway derived substantial revenue. (T. C. A. § 20-2-223)

9.  Valmont Highway, designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and/or participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Valmont Highway uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

10.  Defendant ARMORFLEX INTERNATIONAL LIMITED ("hereinafter Armorflex"), a subsidiary of Valmont Industries, Inc., is a foreign for-profit corporation organized and existing under the laws of New Zealand with its principal place of business at 8 Paul Matthew Road, Auckland 0632, New Zealand. Armorflex was

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 4 of 30   PageID #: 385

acquired by Valmont Industries Inc., in 2013. Armorflex is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Armorflex transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Armorflex while, at or about the time of the injury, Armorflex was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Armorflex were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Armorflex derived substantial revenue. (T. C. A. § 20-2-223)

11.    Armorflex designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Armorflex uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median. Armorflex holds the patent on the X-LITE.

12.    Defendant LINDSAY CORPORATION (hereinafter "Lindsay Corp") is a foreign corporation, organized in the State of Delaware, which at all relevant times was doing business in the jurisdiction of this Honorable Court. Lindsay Corp's principal place of business is located at 222 North 111th Street, Omaha, Nebraska  68164.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 5 of 30   PageID #: 386

Lindsay Corp is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Lindsay Corp transacting business in Tennessee or contracting to supply services or things in Tennessee; committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Lindsay Corp while, at or about the time of the injury, Lindsay Corp was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Lindsay Corp were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Lindsey Corp derived substantial revenue.   (T. C. A. § 20-2-223)

13.     Lindsay Corp designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal.   Lindsay Corp. uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median. Lindsay Corp. holds the license and the trademark to the patented X-LITE.

14.     Defendant LINDSAY TRANSPORTATION SOLUTIONS SALES & SERVICE, INC. (hereinafter "Lindsay TSSS") is a foreign corporation, organized in the State of California, and is a directly and/or indirectly wholly owned subsidiary and/or operational unit or division of Lindsay Corp, which at all relevant times was doing

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 6 of 30   PageID #: 387

business in the jurisdiction of this Honorable Court. Lindsay TSSS's principal place of business is located at 180 River Road, Rio Vista, California 94571. Lindsay TSSS is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Lindsay TSSS transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Lindsay TSSS while, at or about the time of the injury, Lindsay TSSS was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Lindsay TSSS were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Lindsey Corp derived substantial revenue. (T. C. A. § 20-2-223).

15. Lindsay TSSS designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail systems installed in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. Lindsay TSSS uses the registered trademark name "X-LITE" to identify its unique and patented highway guardrail end terminals. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

16. Defendant LINDSAY TRANSPORTATION SOLUTIONS, INC., f/k/a BARRIER SYSTEMS, INC. (hereinafter "Lindsay TS/Barrier Systems") is a foreign corporation, organized in the State of California, and is a directly and/or wholly owned

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 7 of 30   PageID #: 388

subsidiary and/or operational unit or division of Lindsay Corp or Lindsay TSSS, which at all relevant times was doing business in the jurisdiction of this Honorable Court. Lindsay TS/Barrier Systems' principal place of business is located at 180 River Road, Rio Vista, California 94571. Lindsay TS/Barrier Systems is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Lindsay TS/Barrier Systems transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Lindsay TS/Barrier Systems while, at or about the time of the injury, Lindsay TS/Barrier Systems was engaged in solicitation or service activities with in Tennessee, or products, materials, or things processed, serviced, or manufactured by Lindsay TS/Barrier Systems were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Lindsay TS/Barrier Systems derived substantial revenue. (T. C. A. § 20-2-223).

17.     Lindsay TS/Barrier Systems designs, develops, manufactures, tests, markets, promotes, advertises, distributes, sells, and participates in governmental approval processes of guardrail terminals in Tennessee and throughout the United States, including the Subject Guardrail and end terminal. The X-LITE can be used at the termination of flexible barriers on the shoulder of a roadway or in the median.

18.     Defendant REYNOLDS FENCE & GUARDRAIL, INC. [hereinafter "Reynolds"] is a foreign corporation, organized in the State of North Carolina, which at

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 8 of 30   PageID #: 389

all relevant times was doing business in the jurisdiction of this Honorable Court. Reynolds' principal place of business is located at 9320 Machado Drive, Indian Trail, North Carolina, 28079-7718. Reynolds is subject to personal jurisdiction in the state of Tennessee because it is engaged in substantial and not isolated activity within the state of Tennessee; and Plaintiff's action arises from Reynolds transacting business in Tennessee or contracting to supply services or things in Tennessee; or committing a tortious act within Tennessee; or causing injury to persons or property within Tennessee arising out of an act or omission by Reynolds while, at or about the time of the injury, Reynolds was engaged in solicitation or service activities within Tennessee, or products, materials, or things processed, serviced, or manufactured by Reynolds were used or consumed within Tennessee in the ordinary course of commerce, trade, or use, for which Reynolds derived substantial revenue. (T. C. A. § 20-2-223).

19. Reynolds maintains, inspects, monitors, reports on, and/or installs guardrail terminals and end terminals in Tennessee, including the Subject Guardrail and end terminal.

20. VALMONT INDUSTRIES, INC.; VALMONT HIGHWAY; ARMORFLEX INTERNATIONAL LIMITED; LINDSAY CORPORATION; LINDSAY TRANSPORTATION SOLUTIONS SALES & SERVICE, LLC; and LINDSAY TS/BARRIER SYSTEMS are referred to as collectively "Lindsay" or "Lindsay Defendants."

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 9 of 30   PageID #: 390

21.    Jurisdiction and venue are proper in this Honorable Court because McMinn County is the county in which the subject accident giving rise to this Complaint took place.

## ALLEGATIONS COMMON TO ALL COUNTS

22.    On or about November 1, 2016, on Interstate 75 near mile marker 55.90 in McMinn County, Tennessee, Hannah Eimers was the seat belted driver of 2000 Volvo S80, Vehicle Identification Number ("VIN") YV1TS94D6Y1141986, Tennessee License Number S6009N.

23.    At that time and place, the 2000 Volvo was traveling northbound on I-75, within the speed limit, when it left the roadway off the left shoulder and immediately thereafter, the Volvo collided with the X-LITE guardrail end terminal ("Subject Guardrail") that bordered I-75.

24.    During the collision, the X-LITE end terminal and rail system failed to perform its intended safety function and purpose due to a defect(s) with its design, manufacturing, and/or warnings.   Specifically, the X-LITE guardrail failed to properly perform/telescope upon impact.   As a result, when the X-LITE end terminal was impacted by the Volvo, it was not able to maintain its integrity and stop the W-beams, thus allowing the W-beams to pierce through the Volvo's exterior and frame, and enter its driver's side occupant compartment and puncture all the way through into the rear passenger side door.

25.    During the collision, the W-beams penetrated the occupant compartment of the vehicle where Hannah Eimers was sitting, and violently struck her, causing her to

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 10 of 30   PageID #: 391

suffer immediate, horrible, and agonizing pain, severe damage to her internal organs, internal bleeding, hemorrhaging, multiple fractures, and ultimately death.

26.     Hannah was properly licensed, well rested, very familiar with her vehicle, not under the influence of any alcohol or drugs, was not exceeding the speed limit, and was not talking or texting on her phone at the time of the accident.

27.     In the alternative, the X-LITE guardrail failed to perform as intended during the collision because it was improperly installed by Reynolds due to the Lindsay Defendants' failure to provide adequate installation and/or maintenance instructions.

28.     A properly functioning guardrail should not make an accident more dangerous for an occupant. However, in many impacts involving an X-Lite, the victim killed or maimed by the guardrail should and would have survived the accident, as demonstrated by the fact that in nearly every instance where there was another occupant in the vehicle, the occupant walked away essentially unscathed.

29.     The X-Lite's defects can be traced back to its deficient development and testing process.

30.     Evidence has established that Lindsay was using an unfinished prototype design in its federal NCHRP 350 certification process, which was still in the "R&D phase."

31.     Evidence has established that the X-Lite was continuously changing and "evolving" in all but one of the 14 certification test runs, meaning that the exact same X-Lite was **never** subjected to more than one test run, and which further means that the exact X-Lite design involved in each of these accidents has never been put through the

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 11 of 30   PageID #: 392

full certification testing. Evidence has established that Lindsay was clearly not in substantial compliance with governmental regulations.

32. Lindsay has failed to produce documentation demonstrating a thorough analysis in evaluating each of these many different design modifications that the X-Lite went through, or an evaluation about whether each 'new' version of the X-Lite should be evaluated under prior tests that were never run on the 'new' subsequent designs.

33. Even to this date, evidence has established that Lindsay has no documents that definitively identify each and every design change that the X-Lite went through during this rushed 5 week final development process.

34. Lindsay's conscious and reckless failure to exercise due care is even more exacerbated given the fact that the scale of failures of the X-Lite in between each passing test were of a catastrophic magnitude.

35. Lindsay clearly would have been conscious of the probability of resulting injury given the fact that its product was not properly or thoroughly tested or evaluated, and that it was frequently failing its certification tests in terrifying fashion.

36. Moreover, Lindsay misrepresented all of these varied design changes to the federal government when it described them as "minor changes" in its submittal letter.

37. Evidence has established that the changes were in fact "significant and material" despite what was actually represented in Lindsay's submittal letter to the federal government.

38. This is in addition to the variety of design changes that Lindsay failed to identify in its submission letter. For example, from test "XTL04" to "XTL09", the location

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 12 of 30   PageID #: 393

of the bolt for Post 3 was moved from the forward hole to the rear slot but was not disclosed. Additionally, from "XTL04" to "XTL12" it was claimed that shear bolts were added at Posts 5 and 7; however, shear bolts were also added at Post 9. These demonstrate a failure by Lindsay to be in substantial compliance with federal regulations.

39. Evidence has also established that Lindsay was on notice that NCHRP 350 was an outdated standard in relation to the actual size of the American motor vehicle fleet; yet Lindsay developed, designed, and tested the X-Lite solely to meet the outdated and decades-old 350 certification criteria.

40. During the NCHRP 350 certification testing, the X-Lite failed **eight** out of **thirteen** tests. It is clear that Lindsay was 'making it up' as they went along in order to tweak their product so that it could technically pass the tests, without any regard to developing a product that was inherently safe for the motoring public.

41. Despite the fact that NCHRP 350 is simply a **federal funding program's evaluation criteria**, Lindsay treated it as a blueprint to developing their product. Lindsay's sole objective was to get the X-Lite approved and sold, rather than properly developing, designing, testing, and manufacturing a safe product for motorists.

42. Evidence has established that the X-Lite is only expected to protect occupants under the exact same and limited controlled crash condition as the five 350 passing tests. Putting a safety device on American highways with a knowingly unreliable basis to believe that it will save lives in crashes that deviate in even the slightest way from the controlled tests is a classic reckless and conscious disregard for the safety of others.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

43.     Evidence has established that the MASH standard, which Lindsay chose not to utilize for the X-Lite, was a harder and higher standard to meet, and is preferable to the 350. Yet Lindsay refused to submit the X-Lite to this higher standard.

44.     Evidence has also established that part of the reason why proper testing documentation was not generated was because of how quickly the rate of testing was being conducted. In other words, Lindsay was in too much of a rush during its hurried five-week testing/development process to properly document and evaluate the X-Lite.

45.     Lindsay's conscious failure to exercise due care in the development and testing of the X-Lite is further highlighted by the fact that the company that tested, evaluated, and judged the X-Lite, Safe Technologies, Inc. (STI), is actually a subsidiary of Lindsay. Moreover, the test facility manager during that time had no prior experience summarizing test data and putting together reports. In fact, he had not been involved in making the determination of whether a test was passed prior to having joined STI. Evidence has established that Lindsay relied on the inexperienced manager at STI to evaluate not whether a failure occurred in the system, but the reasons why that failure occurred.

46.     These testing issues are in addition to the overall defectiveness of the X-Lite concept, the dangerousness of which a person of ordinary reason and prudence would have recognized as a substantial and unjustifiable risk. For example, the system is inherently limited in its ability to properly telescope by the number of panels that have sheer bolts. Once those panels are exhausted, the system is physically incapable of providing anymore protection to the motorist. It is also limited in its ability to properly

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 14 of 30   PageID #: 395

telescope by, as Lindsay admits, the need for the real-world crash characteristics to be identical to the controlled crash tests in order for the X-Lite to be reliably expected to telescope as intended. The following is a non-exhaustive list of the myriad of other issues that exist with the X-Lite:

     a. The energy absorbing friction technology does not demonstrably absorb very much energy. The low levels of energy absorption would allow telescoping of the panels at high speeds until the vehicle reaches a standard panel outside the terminal, which would likely lead to vehicle penetration.

     b. High energy impacts often tend to separate the telescoping panels, leaving upstream panels exposed, again resulting in a high probability of vehicle penetration.

     c. The small impact head design allows it to easily lodge itself in the engine compartment. For small angle impacts, this restriction can create a large enough stress to actually separate the telescoping panels, likely leading to vehicle penetration.

47. Additionally, Lindsay consciously and recklessly kept itself in the dark about the real-world performance of the X-Lite. Instead it blindly relied on the "states" to update Lindsay. The evidence has established that Lindsay never made any meaningful effort to actually gather information, or to educate the various States' Department of Transportations (DOTs) or contractors about the proper method of identifying X-Lite failures in the field.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 15 of 30   PageID #: 396

48. Finally, Lindsay was on notice about the continual failures of the X-Lites in other accidents involving the similar penetration.

49. Moreover, evidence has established that Lindsay knew that installation defects increase the risk of spearing or penetration in accident.

50. Evidence has established that there was over a 90% installation defect rate throughout three different audits that were conducted on approximately 600 randomly selected X-Lites throughout the country.

51. Evidence has established that **Lindsay was on notice** about this deadly epidemic and likelihood of fatal injuries resulting from X-Lite impacts.

52. Although Lindsay was also on notice about shockingly high and ongoing installation defects as demonstrated by several years' worth of correspondence, internal emails discussing issues with contract installers and state inspectors, and multiple failed audits, Lindsay made no meaningful efforts to address this rampant problem. Instead, Lindsay knowingly continued its efforts to flood the market with a product with known installation issues of which Lindsay was admittedly aware could lead to deadly malfunctions upon impact. Evidence has established that Lindsay was on notice of this issue going back to at least 2014. And a 2015 email from Lindsay's Regional Manager and Installation Trainer even read: "**I have not met one contractor that has initially installed X-Lite correct without me being there to assist**." This behavior by Lindsay undoubtedly constitutes a conscious disregard of a substantial and unjustifiable risk.

53. Moreover, despite evidence establishing that the 90% installation defect arose from dozens of installers and DOTs who received training directly from Lindsay,

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 16 of 30   PageID #: 397

internal documents and testimony confirm that Lindsay **never** once accepted any responsibility for this epidemic of defectively installed X-Lites, and consistently refused to meaningfully alter their training practices, which constitutes a reckless and conscious failure to exercise due care given the catastrophic consequences that they admitted could and would arise from improperly installed X-Lites.

54.     Evidence has established that Lindsay's representatives never received a remediation plan by the DOTs to address the rampant installation defects that Lindsay knew existed with the X-Lites following Lindsay's training, yet they continued to sell X-Lites.

55.     Evidence has established that Lindsay was lying when it wrote to the FHWA that the X-Lite was known to have a lower rate of improper installation than its competitors.

56.     There were also a variety of misrepresentations about the 350 crash test results in the submittal letter to the FHWA, that demonstrate a failure to be in substantial compliance with applicable federal regulations, including but not limited to:

a.  The location of the bolt for post 3 being moved from the forward hole to the rear slot from XLT04 to XLT09;

b.  The addition of shear bolts at post 9 from XLT04 to XLT12;

c.  The removal of shear bolts at post 9 and placement of standard guardrail splice bolts from XLT12 to XLT14;

d.  The addition of two pins on the front and upper and lower supports on the back of the impact head from XLT04 to XLT12;

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

e. The addition of two pins on the front and upper and lower supports on the back of the impact head from XLT04 to XLT12;

f. The movement of the bolt from the leading edge of post 3 to the trailing edge of post 3 in the tangent testing; and

g. The shear bolts at post 9 being removed and replaced with standard shear bolts between XLT12 and XLT14.

57. Moreover, Lindsay was on notice about a variety of OSIs (Other Similar Incidents) and concerns about the X-Lite that preceded the Plaintiff's accident. The Virginia DOT conducted its own testing on the X-Lite utilizing a 5° angle, and then promptly notified Lindsay that it was removing the X-Lite from its QPL (Qualified Product List) on September 1, 2016 based on the troubling results. Tennessee DOT removed it as well on October 25, 2016. Lindsay's Regional Manager sent an email to its President that same day containing a page of bullet points reiterating the multitude of concerns surrounding the X-Lite. Ironically, Hannah Eimers was tragically killed six days later. Over the next eight months, nine other states would ban the X-Lite. There is no state in the country that permits the installation of an X-Lite on its roadways.

58. Although clearly on notice about the multitude of issues surrounding its product, Lindsay made no meaningful attempt to gather information about the X-Lite. Lindsay's blind reliance on state DOTs to passively pass information on was a willfully ignorant method that it knew or should have known would not provide fruitful results. In fact, the evidence has established that Lindsay never provided any training to the installers or the DOTs about how to even identify whether there was a suspected failure

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 18 of 30   PageID #: 399

of the X-Lite in real world crashes so that they could possibly know when and what to report back to Lindsay.

59.     All of the first responder testimony obtained in the various lawsuits against Lindsay also confirm that they never received any training regarding how to spot a potential failure of the X-Lite so that it could ultimately be communicated to Lindsay.

60.     Finally, evidence has established that Lindsay knew that the X-Lite was being installed on roadways with speed limits that far exceeded the 62.5 mph impacts for which the X-Lite's bare minimum limited certification testing was conducted.  In fact, evidence has established that Lindsay knew its product would be utilized on roadways that exceeded its tested capabilities, but they still continued to sell the product.

61.     Thus Lindsay was on notice that the X-Lite would be used on roadways such as I-75.  Yet it has produced no evidence of any testing conducted to demonstrate that it would function safely at any speed greater than 62.5 mph.  In fact, Lindsay has admitted as much in response to Request for Admissions: "*Lindsay admits that it has not conducted testing of X-LITE at impact speeds in excess of 62.5 mph.*"   Lindsay's Corporate Representative and President confirmed that even now, over eight years since the 350 testing, Lindsay still has "*no data to say beyond 62.5 mph how any product is going to be able to perform.*"  Yet, despite having no such data from Lindsay, its testing facility, any state Department of Transportation, the Federal Highway Administration, or even any installers, Lindsay continued to market the X-Lite all over the country, and internationally, knowing it would be installed on roadways with speed limits well in excess of 62.5 mph.  This type of corporate behavior constitutes a classic reckless

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 19 of 30   PageID #: 400

disregard of substantial and unjustifiable risks, which constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

## COUNT I – NEGLIGENCE AGAINST THE LINDSAY DEFENDANTS

62. Plaintiff hereby incorporates by reference previous paragraphs 1 through 61 as if fully set forth herein.

63. The Lindsay Defendants owed a duty of reasonable care in the design development, testing, manufacture, assembly, inspection, marketing, distribution, promotion, training, advertisement and sale of the Subject Guardrail so as to avoid exposing Plaintiff to unnecessary and unreasonable risks.

64. The Lindsay Defendants breached that duty in one or more of the following ways:

    a. By negligently failing to use due care in the design, development, manufacture, assembly, testing, inspection, marketing, promotion, training, distribution, advertising, sale, or processing of the Subject Guardrail and its component parts, in order to avoid the aforementioned risks to individuals;

    b. By failing to adequately warn foreseeable purchasers, installers, and end users of the unreasonable dangerous and defective condition(s) of the X-LITE end terminal, despite the fact that they knew or should have known of the unreasonably dangerous condition(s);

    c. By failing to disclose known problems and defects;

Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400   Facsimile (561) 515-1401

d. By marketing the X-LITE as safe;

e. By failing to adequately provide proper and clear installation, repair, maintenance, and/or instruction manuals, and failing to provide adequate warnings;

f. By failing to comply with reasonable and necessary guidelines, including those of the Department of Transportation, the Federal Highway Administration, and/or the National Cooperative Highway Research Program (NCHRP);

g. By failing to design and/or manufacture the X-LITE end terminal according to the specifications and approved by the Department of Transportation, the Federal Highway Administration, and/or the NCHRP;

h. By failing to make timely corrections to the design of the Subject Guardrail to correct the guardrail system;

i. By failing to adequately identify and mitigate the hazards associated with the guardrail system in accordance with good engineering practices;

j. By failing to adequately test the Subject Guardrail system, including the head and rail system, to ensure it provided foreseeable owners and passengers of the motoring public with reasonable safety in foreseeable impacts;

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 21 of 30   PageID #: 402

k. By manipulating, misrepresenting, and/or concealing testing data pertaining to the Subject Guardrail system;

l. By failing to disclose known problems and defects;

m. By failing to meet or exceed internal corporate guidelines;

n. By failing to recall the guardrail system or, alternatively, retrofitting the guardrail system to provide reasonable safety for the motoring public; and

o. By failing to recall the X-LITE end terminal to enhance safety.

65.    As a direct and proximate result of the Lindsay Defendants negligence, Hannah Eimers suffered fatal injuries and the Defendants are responsible for her death and damages as set forth below:

a. Stephen Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law;

b. Melissa Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law; and

c. The Estate of Hannah Eimers has lost prospective net accumulations and has incurred medical and funeral expenses due to the decedent's injury and death.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 22 of 30   PageID #: 403

WHEREFORE, Plaintiff, STEPHEN EIMERS, as the Personal Representative of the Estate of HANNAH EIMERS, deceased, demands judgment for compensatory damages, punitive damages, and costs against the Lindsay Defendants, and requests trial by jury on all issues so triable.

## COUNT II- STRICT LIABILITY AGAINST THE LINDSAY DEFENDANTS

66.     Plaintiff hereby incorporates by reference previous paragraphs 1 through 61 as if fully set forth herein.

67.     This is a Count for strict liability against the Lindsay Defendants.

68.     At all times material to this cause of action, the Lindsay Defendants were in the business of, and gained profits from, the design development, testing, manufacture, assembly, inspection, marketing, distribution, promotion, advertisement, and/or sale of X-LITE guardrail system through the stream of commerce.

69.     At all times material to this cause of action, the Subject Guardrail system was unreasonably dangerous and defective because:

  a. The Lindsay Defendants failed to use due care in the design, development, manufacture, assembly, testing, inspection, marketing, promotion, distribution, advertising, sale, and/or processing of the Subject Guardrail and its component parts, in order to avoid the aforementioned risks to individuals;

  b. The Lindsay Defendants failed to adequately warn foreseeable purchasers, installers, and end users of the unreasonable dangerous and

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

defective condition(s) of the X-LITE end terminal, despite the fact that they

knew or should have known of the unreasonably dangerous condition(s);

c. The Lindsay Defendants failed to disclose known problems and defects;

d. The Lindsay Defendants marketed the X-LITE as safe;

e. The Lindsay Defendants failed to adequately provide proper and clear

installation, maintenance, and repair instruction manuals, and failed to

provide adequate warnings;

f. The Lindsay Defendants failed to comply with reasonable and necessary

guidelines, including those of the Department of Transportation, the

Federal Highway Administration, and the NCHRP;

g. The Lindsay Defendants failed to design and/or manufacture the X-LITE

end terminal according to the specifications and approved the Department

of Transportation, the Federal Highway Administration, and/or the

NCHRP;

h. The Lindsay Defendants failed to make timely corrections to the design of

the Subject Guardrail to correct the guardrail system;

i. The Lindsay Defendants failed to adequately identify and mitigate the

hazards associate with the guardrail system in accordance with good

engineering practices;

j. The Lindsay Defendants failed to adequately test the Subject Guardrail

system, including the head and rail system to ensure it provided

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 24 of 30   PageID #: 405

foreseeable owners and passengers of the motoring public with reasonable safety in foreseeable impacts;

k. The Lindsay Defendants manipulated, misrepresented, and/or concealed testing data pertaining to the Subject Guardrail system;

l. The Lindsay Defendants failed to disclose known problems and defects;

m. The Lindsay Defendants failed to meet or exceed internal corporate guidelines;

n. The Lindsay Defendants failed to recall the guardrail system or, alternatively, retrofit the guardrail system to provide reasonable safety for the motoring public; and

o. The Lindsay Defendants failed to recall the X-LITE end terminal to enhance safety.

70. The Lindsay Defendants designed, developed, manufactured, assembled, tested, inspected, marketed, promoted, distributed, advertised, sold, and/or processed the guardrail system and/or its component parts that is the subject of this litigation with unintended and unreasonably dangerous defects, which unintended and unreasonably dangerous defects were present in the guardrail system and/or its component parts when the Defendants placed the guardrail system and/or its component parts into the stream of commerce.

71. The Subject Guardrail did not undergo any material change or alteration from the time of sale through, up to and including, the time of the aforementioned crash.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 25 of 30   PageID #: 406

72.     As a direct and proximate result of the Lindsay Defendants negligence,
Hannah Eimers suffered fatal injuries and the Defendants are responsible for her death
and damages as set forth below:

      a.  Stephen Eimers, the surviving parent of Hannah Eimers, deceased,
has suffered and will continue to suffer mental and physical anguish,
loss of society and companionship, and all other damages and
expenses allowed under Tennessee law;

      b.  Melissa Eimers, the surviving parent of Hannah Eimers, deceased, has
suffered and will continue to suffer mental and physical anguish, loss
of society and companionship, and all other damages and expenses
allowed under Tennessee law; and

      c.  The Estate of Hannah Eimers has lost prospective net accumulations
and has incurred medical and funeral expenses due to the decedent's
injury and death.

WHEREFORE, Plaintiff, STEPHEN EIMERS, as the Personal Representative of
the Estate of HANNAH EIMERS, deceased, demands judgment for compensatory
damages, punitive damages, and costs against the Lindsay Defendants, and requests
trial by jury on all issues so triable.

## COUNT III: NEGLIGENCE OF REYNOLDS

73.     Plaintiff hereby incorporates by reference previous paragraphs 1 through
27 as if fully set forth herein.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 26 of 30   PageID #: 407

74.    Defendant Reynolds contracted with the Tennessee Department of Transportation ("TDOT") to complete TDOT projects of adding, installing, inspecting, maintaining, monitoring, repairing, replacing, and/or overseeing the Subject Guardrail on I-75 in McMinn County, Tennessee.

75.    Reynolds had a duty to properly install, inspect, maintain, repair, monitor, and/or oversee such projects in a manner so as to protect individuals such as Hannah Eimers from unnecessary and unreasonable risks.

76.    Reynolds knew or should have known by the exercise of reasonable care that the Guardrail was not properly installed and secured such that upon impact at highway speed, it would separate allowing for a failure of the Guardrail system and thus allow intrusion of the guardrail into the subject vehicle.

77.    Reynolds breached its duty in one of more of the following ways:

a.  Failing to properly install, construct, maintain, repair, monitor, and/or inspect the subject Guardrail/X-LITE end terminal;

b.  Failing to discover the hazardous and unsafe condition of the Subject Guardrail/X-LITE end terminal;

c.  Failing to correct the hazardous and unsafe condition of the Subject Guardrail/X-LITE end terminal; and

d.  Failing to ensure its agents, subcontractors, and/or employees properly installed, constructed, maintained, repaired and/or inspected the Subject Guardrail/X-LITE end terminal.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 27 of 30   PageID #: 408

78.     Reynolds's acts and/or omissions created an unreasonable risk of injuries to vehicle occupants and the motoring public, including Hannah Eimers.

79.     As a direct and proximate result of Reynolds's negligence, Hannah Eimers suffered fatal injuries and the Defendant is responsible for her death and damages as set forth below:

  a. Stephen Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law;

  b. Melissa Eimers, the surviving parent of Hannah Eimers, deceased, has suffered and will continue to suffer mental and physical anguish, loss of society and companionship, and all other damages and expenses allowed under Tennessee law;

  c. The Estate of Hannah Eimers has lost prospective net accumulations and has incurred medical and funeral expenses due to the decedent's injury and death.

WHEREFORE, Plaintiff, STEPHEN EIMERS, as the Personal Representative of the Estate of HANNAH EIMERS, deceased, demands judgment for compensatory damages, punitive damages, and costs against the Defendant Reynolds, and requests trial by jury on all issues so triable.

Respectfully submitted on June 3, 2019

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

/s/ Theodore J. Leopold
THEODORE J. LEOPOLD, ESQ.
Florida Bar No: 705608
tleopold@cohenmilstein.com
Admitted *Pro Hac Vice*
LESLIE M. KROEGER, ESQ.
Florida Bar No: 989762
lkroeger@cohenmilstein.com
Admitted *Pro Hac Vice*
POORAD RAZAVI, ESQ.
Florida Bar No.: 0022876
prazavi@cohenmilstein.com
Admitted *Pro Hac Vice*
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400


/s/ Gregory F. Coleman
Gregory F. Coleman
TN Bar No 14092.
Adam A. Edwards
TN Bar No. 23253
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response was served on counsel for the parties listed below via electronic mail and first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Brigid M. Carpenter, Esq.
bcarpenter@bakerdonelson.com
Baker Donelson Bearman, et. al.
211 Commerce Street #800
Nashville, TN 37201
Attorneys for Lindsay Defendants

James H. Heller, Esq.
jimheller@cozen.com
Shelby Riney, Esq.
sriney@cozen.com
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Attorneys for Lindsay Defendants

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

Case 1:19-cv-00044-TRM-SKL   Document 36   Filed 06/03/19   Page 30 of 30   PageID #: 411