**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| STEPHEN EIMERS, *as personal representative* | ) | |
| *of the Estate of Hannah Eimers*, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00044-TRM-CHS |
| | ) | |
| LINDSAY CORPORATION, *et al.* | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**I.      Introduction**

This matter is before the Court on various motions to seal [Docs. 213, 224 and 259] filed by Defendants Lindsay Corporation and Lindsay Transportation Solutions, LLC, f/k/a (i) Lindsay Transportation Solutions Sales & Service, LLC, and (ii) Lindsay Transportation Solutions, Inc., f/k/a Barrier Systems, Inc., (collectively, "Lindsay"), and upon the Plaintiff's Motion to Unseal Documents [Doc. 285]. At issue is whether Lindsay has met its high burden to show that its interest in keeping certain licensing agreements and developmental test data permanently under seal outweighs the public's First Amendment right to access this information.

For the reasons stated herein, the Court **DENIES** the Motion to Seal filed as Doc. 213, **GRANTS IN PART** and **DENIES IN PART** the Motion to Seal filed as Doc. 224, and **DENIES** the Motion to Seal filed as Doc. 259. Further, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Unseal Documents filed as Doc. 285.

**II.      Background**

This case involves a wrongful-death products-liability claim arising from a car crash on Interstate 75 on November 1, 2016. Hannah Eimers was driving a 2000 Volvo S80 north on

1

Interstate 75 near mile marker 55.90 in McMinn County, Tennessee. The Volvo left the roadway, began a clockwise yaw, and collided with the guardrail end terminal at mile marker 56 ("subject guardrail"). As a result of the collision, part of the subject guardrail penetrated the driver-side door, entered the occupant compartment, and severely injured Hannah Eimers, ultimately resulting in her death. This guardrail is known as the X-Lite guardrail system. Hannah Eimers's father, Plaintiff Stephen Eimers, now brings claims under the Tennessee Product Liability Act ("TPLA") against Lindsay.

III.    Discussion

On February 22, 2019, the Court entered its Order Governing Sealing Confidential Information [Doc. 10]. In that Order, the Court set forth the applicable standards that Lindsay must meet to place under seal information filed in the court record. Those standards are incorporated by reference in this Memorandum and Order. To summarize, the party seeking to keep under seal portions of the court record must show compelling reasons to do so which outweigh the public's First Amendment right of access to the court record. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich*, 825 F.3d 299, 305 (6th Cir. 2016). The greater the public's interest in the subject matter at issue, the greater the burden to show a compelling reason. *Id.* "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983). On the other hand, genuine trade secrets which, if made public, would harm a company's ability to compete in the open market may constitute a compelling interest outweighing the public's right to access provided the sealing is only as narrow as needed to protect the trade secrets and prevent harm to the company. *Id.* at 1179; *see also Shane Grp.*, 825 F.3d at 305. Redactions of information relied upon by a party in support

2

of, or in opposition to, any issue before the Court are considered to be sealed information and the same standard applies. [*See* Doc. 10, Order Governing Sealing Confidential Information at 3,].

There are two types of information at issue in this case: (1) information concerning certain developmental crash tests; and (2) Licensing Agreements between Armorflex International Ltd. ("Armorflex") and Lindsay, and between Lindsay and Forjas Metalicas S.A. DE C.V. d/b/a Formet ("Formet"). The sealing motions at Docket Nos. 213 and 259 seek to file under seal information concerning the developmental crash tests. The sealing motion at Docket No. 224 likewise seeks to seal information concerning the developmental crash tests; however, it also seeks to seal the Licensing Agreements.

Plaintiff has filed a "Motion to Unseal" the information Lindsay has moved to seal. To be clear, Lindsay's motions to seal have not yet been resolved by the Court and the documents that are the subject of the motions to seal have not yet been sealed—so there is, at present, nothing to "unseal."[1] Nevertheless, the Court will consider Plaintiff's arguments in the Motion to Unseal [Doc. 285] and accompanying brief [Doc. 288] in considering whether to grant the pending motions to seal.

### A.      Information Related to Developmental Crash Tests

The crash tests at issue are developmental NCHRP 350 crash tests for the end terminal of the X-Lite guardrail system. Lindsay seeks to have all references to these developmental crash tests redacted from the public record. According to Lindsay, these developmental tests were conducted by Armorflex—not Lindsay, and Armorflex was the designer and developer of the X-Lite guardrail system. NCHRP stands for National Cooperative Highway Research Program. The

---

[1] The confusion stems, at least in part, from the fact that, in Lindsay's motion to seal at Doc. 259, the documents Lindsay seeks to seal were denominated at Doc. 258 as "*Sealed*" documents, not "*Proposed* Sealed" documents in contravention of ECF Rule 12.2. The Court has since directed the Clerk of Court to revise the docket to indicate Doc. 258 consists of "*Proposed* Sealed" documents.

NCHRP is "a national research program carried out through the collaborative efforts of the Federal Highway Administration, the National Academy of Sciences, Engineering, and Medicine, and the American Association of State Highway and Transportation Officials" "as a means to conduct research in acute problem areas that affect highway planning, design, construction, operation, and maintenance nationwide."[2]

The NCHRP 350 requires that end terminals demonstrate crashworthiness in specific, idealized conditions. These developmental crash tests were not submitted to the Federal Highway Administration ("FHWA") and did not meet NCRHP 350 crashworthy standards. Lindsay submits that it was not required to submit these crash tests for reasons that will be addressed later.

References to these crash tests are found in various portions of Plaintiff's experts' reports—namely, Dr. van Schoor's expert report and Dr. Schrum's expert report. Dr. van Schoor is a mechanical engineer who opines on alleged defects in the X-Lite guardrail system. Dr. Schrum is also a mechanical engineer who is designated to testify about a number of subjects including the absorption of energy by the guardrail end terminal upon impact by Hannah Eimer's vehicle. Dr. van Schoor's report has been submitted in support of Lindsay's motion to exclude his expert opinion [Doc. 210] and as part of the Joint Appendix which was filed for the Court's consideration when ruling upon, *inter alia*, Lindsay's motion for summary judgment. Dr. Schrum's report has been filed as part of the Joint Appendix.[3]

Lindsay offers three reasons why those portions of said expert reports which reference the developmental crash tests should be redacted from the public record: (a) Plaintiff's previous

---

[2] *See* website of the U.S. Dept. of Transportation, FHWA, https://highways.dot.gov/research/opportunities-partnerships/partnerships/national-cooperative-highway-research-program (last visited 3/21/22).

[3] Unredacted copies of Dr. van Schoor's report have been filed as a proposed sealed document at Doc. 214 and Doc. 225-2. An unredacted copy of Dr. Schrum's expert report is filed as a proposed sealed document at Doc. 225-3. Proposed seal documents are documents placed temporarily under seal while the corresponding motion to seal is pending.

counsel had an agreement with Lindsay's counsel to file under seal information designated by Lindsay as confidential; (b) Plaintiff Stephen Eimers intends to use this information for an improper purpose; and (c) this information is not relevant to the issues in this case. For the following reasons, the Court finds none of these reasons availing.

### 1.     Counsel's Agreement

From the time this action was filed until February 2022, Plaintiff was represented by the law firms of Milberg Coleman Bryson Phillips Grossman, PLLC, and Cohen Milstein Sellers & Toll PLLC (the "Cohen Firm"). Lindsay has been involved in other litigation concerning the X-Lite guardrail system in which the plaintiffs were represented by the Cohen Firm. According to Lindsay, in those other cases, Lindsay and the plaintiffs entered into written protective orders requiring the plaintiffs to file under seal anything Lindsay designated as confidential. Lindsay asserts that the Cohen Firm agreed to abide by those protective orders in this case, even though a similar written protective order was not entered in this case. In February 2022, Plaintiff's counsel withdrew from this case, and Attorneys Teresa Monroe and Richard Sullivan entered their appearance as counsel for Plaintiff. Attorneys Monroe and Sullivan, on behalf of Plaintiff, argue that Lindsay's motions to seal should be denied. Lindsay asserts that Attorneys Monroe and Sullivan now seek to circumvent the informal agreement it had with the Cohen Firm and that such conduct is improper. Lindsay also asserts it would not have produced the information had it known that their agreement would not be honored.

The fact that the parties may have had an agreement to file under seal information designated as confidential has no bearing on the Court's decision whether to seal all or a portion of the court record.[4] As the Court's Order Governing Sealing Confidential Information states,

---

[4] This Court will not enter a protective order requiring information to be summarily filed under seal simply because it has been designated as confidential by a party.

parties can agree to keep information confidential during discovery and post-litigation, but they

cannot agree to file anything under seal:

> This Court regularly signs agreed protective orders, pursuant to Federal Rule of
> Civil Procedure 26(c), which permit the parties to designate the discovery they wish
> to keep confidential among themselves. This practice is permissible because
> "'[s]ecrecy is fine at the discovery stage, before the material enters the judicial
> record.'" *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich*, 825 F.3d 299, 305
> (6th Cir. 2016) (quoting *Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 545 (7th
> Cir. 2002)). Unfortunately, parties often assume—erroneously—that because they
> have designated certain information as confidential, they can then file that same
> information under seal in the Court's record. "[T]here is a stark difference between
> so−called 'protective orders' entered pursuant to the discovery provisions of Federal
> Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on
> the other." *Id*.

[Doc. 10, Order Governing Sealing Confidential Information at 1]. The Court explained,

> When information is exchanged during the discovery phase of litigation, that
> information is not considered by a court to render a ruling on an issue in the case.
> *See id*. "At the adjudication stage, however, very different considerations apply,"
> *id*. (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)), because, of course, a
> court does consider the information filed in the court record to make its rulings.
> Therefore, "[u]nlike information merely exchanged between the parties, '[t]he
> public has a strong interest in obtaining information contained in the public
> record.'" *Id*. (quoting *Brown & Williamson Tobacco Corp. v. F.T.C*., 710 F.2d 1165,
> 1180 (6th Cir. 1983)). Accordingly, "[c]ourts have long recognized . . . a 'strong
> presumption in favor of openness' as to court records." *Id*. (quoting *Brown &
> Williamson*, 710 F.2d at 1179).

[*Id.*]. Thus, Lindsay's argument that an agreement exists requiring the filing under seal of

information designated as "confidential" is not a sufficient basis to permit documents to be filed

under seal. Nor is the Court persuaded by  Lindsay's argument that it would not have produced the

information had it known that such information could be made a part of the public record. Whether

information must be produced during discovery is an issue entirely separate from the issue of

whether that same information can be sealed in the court record. A decision regarding the former

does not inform the latter.

6

### 2.     Use for an Improper Purpose

Lindsay asserts that Plaintiff Stephen Eimers has a personal vendetta, is motivated by "spite," and is on a crusade to cause competitive harm to Lindsay by widely disseminating the information regarding the developmental crash tests to "the media, State DOTs, Lindsay's competitors, and other key players in the roadside industry." [Doc. 213, Lindsay's Motion to Seal at 5]. Lindsay argues that this dissemination of information is improper and is a sufficient basis for sealing the information. Plaintiff counters that his dissemination of information to the media about Lindsay and the X-Lite guardrail system is an effort to prevent further deaths like his daughter's.

Significantly, what Lindsay does *not* argue is that access by the public to these crash tests will reveal confidential designs or design procedures unique to Lindsay, the publication of which would harm its ability to compete in the guardrail industry. Rather, it appears Lindsay is concerned that, if the failed crash tests are revealed to the public, Lindsay's reputation will be harmed and, in that way, so will its competitiveness in the industry. Mere harm to reputation is insufficient to justify sealing portions of the court record. *Brown & Williamson*, 710 F.2d at 1179. In addition, the Court observes that the crash test results are not of a personal, salacious nature nor are they unrelated to the issues in this case—a scenario under which such information might merit sealing. Rather, these developmental crash tests are relevant to Plaintiff's arguments that Lindsay is liable to Plaintiff under the TPLA. This brings the Court to the last argument offered by Lindsay for sealing all references to the developmental crash tests.

### 3.     Relevancy of the Developmental Crash Tests

Lindsay asserts that the developmental crash tests are not relevant to the issues in this case because their data were not required to be produced to the FHWA, and, in any event, Lindsay did

7

not design the X-Lite guardrail system. Rather, Lindsay argues, the guardrail which failed NCHRP 350 criteria was then modified, and the guardrail at issue in this case met the NCHRP 350 criteria. As such, Lindsay asserts the failed developmental crash tests are not relevant to any of the issues raised in its motion for summary judgment.

On the other hand, Plaintiff, in his response to Lindsay's motion for summary judgment, relied heavily on these developmental crash tests to argue, *inter alia,* that Lindsay was significantly involved in the design and testing of the X-Lite guardrail system; that Lindsay was negligent in doing so; that the guardrail tested in the failed crash tests was not significantly different from the guardrail involved in Ms. Eimer's crash; that Lindsay knew or should have known the X-Lite was unreasonably dangerous; and that Lindsay's warnings to TDOT regarding this system were inadequate. Moreover, the issuance of an FWHA letter of approval does not absolve a manufacturer or designer of liability under the TPLA. An FHWA approval letter simply entitles state departments of transportation to receive subsidies for the purchase and installation of end terminals.

To further illustrate the relevance of these failed crash tests, the Court observes that, in its Memorandum Opinion entered on December 21, 2022 [Doc. 269], the District Court stated "evidence in the record, including emails, deposition testimony, signatures on contracts, and marketing materials, implicate Lindsay Corporation in the design, marketing, and manufacturing of the X-LITE. Evidence in the record suggests Lindsay also redesigned, developed, and tested the X-LITE after licensing the original design from Armorflex." [*Id.* at 3, 51-52]. The District Court stated that the jury could assess from the evidence, including the failed crash tests, whether the FHWA would not have issued its approval letter had it known of those tests. [*Id*. at 26].

While the Court offers no opinion as to whether these crash tests prove what Plaintiff contends they prove, they do appear to be relevant to the issues raised in Lindsay's Motion for Summary Judgment.

Finally, the Court finds that the public has a significant interest in the safety of guardrail systems installed on the public highways since the public regularly traverses the highways. In sum, Lindsay has not shown that it has a compelling interest which outweighs the public's First Amendment right of access to the developmental crash tests at issue. The motions to seal filed at Docs. 213 and 224 are denied as to the developmental crash tests.

### B. The Licensing Agreements between Armorflex and Lindsay and between Lindsay and Formet.

Lindsay seeks to have sealed, in their entirety, the licensing agreements between Armorflex and Lindsay and between Lindsay and Formet (the "Licensing Agreements"). [*See* Motion to Seal, Doc. 224]. These Licensing Agreements are part of the Joint Appendix submitted in this case and have been filed temporarily under seal pursuant to Electronic Case Filing ("ECF") Rule 12.2 as proposed sealed documents at Doc. 225-1.

Lindsay has submitted a declaration from Scott Marion, President of Lindsay Corporation, averring that the Licensing Agreements at issue "contain heavily negotiated and protected royalty rates" between Lindsay and Armorflex and between Lindsay and Formet which "allow Lindsay to form competitive strategies and compete in the marketplace." [Doc. 224-1, Scott Decl. ¶ 4]. Mr. Scott further avers that "individualized royalty rates are offered to specific licensors/licensees and are not shared with competitors in the market." [*Id.*]. In his response to Lindsay's argument to seal the Licensing Agreements, Plaintiff argues that the X-Lite guardrail system has been removed from the list of qualified products issued by each state's department of transportation and that, therefore, these Licensing Agreements are now "moot" since a state will not purchase a guardrail

system that is not approved by the FHWA. The Licensing Agreements themselves may be moot, but the prices, royalty rates and financial structure Lindsay is willing to negotiate for its products is not. Access to this information by Lindsay's competitors could give them an advantage over Lindsay in negotiating financial terms with licensors and licensees. Further, Plaintiff has not explained what the public's interest is in this information and none is patently obvious to the Court. The Court concludes Lindsay has shown a compelling interest in sealing the financial terms of the Licensing Agreements which interest outweighs the public's right of access to such information. To that end, the Court will require that the Licensing Agreements be filed in the public record *with the financial terms of the Licensing Agreements redacted.* An unredacted version of the Licensing Agreements will remain in the court record. Further, the Court will require the parties to work together to determine exactly what is to be redacted from the Licensing Agreements in compliance with this Order. If the parties cannot agree, they are to contact this Court by email at Steger_Chambers@tned.uscourts.gov to arrange a video conference. In sum, the Motion to Seal, Docket No. 224, is granted as to the Licensing Agreements as stated herein.

C.       Motion to Seal—Docket No. 259

Docket No. 259 is a motion to seal the various documents submitted as a supplement to the Joint Appendix and filed as "Proposed Sealed" documents at Docket No. 258. The Cohen Firm, on behalf of Plaintiff, filed the motion to seal at the request of Lindsay, but strenuously denied that any of the proposed sealed documents merited sealing. A brief review of the 513 pages that Lindsay requests to be filed under seal show they include depositions, emails, and reports which reference the developmental crash tests. It appears that Lindsay seeks to redact from the public record any reference whatsoever of prior failed crash tests.

10

In its Order Governing Sealing Confidential Information, the Court directed that,

> In the event a party moves to file under seal information which has been designated as confidential by someone else (e.g., another party or a non–party), the party who has designated the information as confidential will have fourteen days from service of the motion to seal to file: (a) a response indicating whether that party supports the motion to seal, and (b) if the response is in the affirmative, any declarations or other papers supporting such response.

[Doc. 10, Order Governing Confidential Information at 3]. Lindsay did not file any response to this motion to seal setting out reasons why the specific redactions it requested merit sealing. Further, for the reasons already stated, Lindsay has not met its burden to show that information regarding the developmental crash tests should be permanently sealed. The Court therefore denies this motion to seal at Docket No. 259.

### D.    Housekeeping Matters

In his Motion to Unseal [Doc. 285] Plaintiff states that his motion applies to Docket Nos. 109-9, 160-1, 147, 213, 214, 224, 225, 258, and 259.

Docket No. 109 is Lindsay's Motion to Exclude Dr. Schrum's expert report. Docket No. 109-9 is a redacted version of Dr. Schrum's expert report that Lindsay filed in support of its motion to exclude. Lindsay is entitled to file the materials it chooses in support of its motion. If Lindsay files a redacted version of a report, the Court, when ruling on the motion, cannot consider the material which has been redacted because it would not be in the record—*unless* the Plaintiff files an unredacted version of the same report in opposition to the motion. Plaintiff did not do so. As it relates to *this motion*, there is nothing for the Court to contemplate sealing or unsealing.

Docket No. 160 is Lindsay's Memorandum in Support of its Motion to Exclude Dr. Schrum's Expert Report. Docket No. 160-1 is Dr. Schrum's report. Docket No. 160 and all its attachments were stricken from the record after Lindsay moved the Court to do so [Doc. 226] and the Court granted the motion [Doc. 227]. Docket No. 160 and its attachments have not been

11

considered by the Court in ruling on any matters before it. Further, the Court has ordered Dr. Schrum's expert report to be filed in unredacted form elsewhere in the public record. Thus, Plaintiff's Motion to Unseal is moot as to Docket No. 160-1.[5]

Docket No. 147 is Lindsay's Emergency Motion to Seal Docket No. 144, Lindsay's Memorandum in Support of its Motion to Exclude Dr. van Schoor's Expert Report. Docket No. 144 was stricken from the record by the Court [Doc. 227] upon Lindsay's request [Doc. 226]. Nothing in Docket No. 144, including its attachments, has been considered by this Court in ruling on any matters before this Court. Therefore, the Motion to Unseal is denied as moot as to Docket Nos. 147 and 144.

Plaintiff also seeks to unseal any redacted attachments to Docket Nos. 213, 224, and 259. These docket numbers are the motions to seal which the Court has addressed in this Order and, as required by ECF Rule 12.2, *redacted* versions of the documents sought to be filed under seal were properly attached to the motions to seal. Unredacted versions—the versions which Lindsay wants filed permanently under seal—are currently in the record as proposed sealed documents at Docket Nos. 214, 225, and 258. It is *those* documents which the Court must determine whether to seal or not seal—not the redacted versions. This is so because the material at issue in these motions to seal are contained in the *unredacted* documents filed as proposed sealed documents—not the redacted documents. Consequently, Plaintiff's motion to unseal is denied as the ***attachments*** to Docket Nos. 213, 224, and 259.

---

[5] The following docket numbers, filed *by Lindsay*, were also stricken from the record [Doc. 227] at Lindsay's request. [Doc. 226]: 143, 144, 148, 149, 152, 154, 155, 156, 157, 160, 161, 162, 163, 164, 169, 170, and 171. The Court has not relied on any of these filings in ruling on any matters before it in this case.

## IV.    Conclusion

For the reasons stated herein, it is **ORDERED** that:

1. The Motion to Seal—Docket No. 213 is **DENIED**. Within ten days of entry of this Order, Lindsay shall file in the public record Dr. van Schoor's unredacted expert report (found at Docket No. 214) and shall "link" the report to its Motion to Exclude Dr. van Schoor's Expert Report [Doc. 210].

2. The Motion to Seal—Docket No. 224 is **GRANTED** in part and **DENIED** in part as follows:

    a. Doc. 225-1, the unredacted Licensing Agreements, shall remain under seal. Plaintiff's counsel and Lindsay's counsel shall work together to redact from the Licensing Agreements the financial terms of said agreements. Plaintiff shall file, as part of the Joint Appendix, the Licensing Agreements, *with financial terms redacted*, in the public record within ten days of entry of this Order. If the parties cannot agree as to the required redactions, the parties shall contact the Court to arrange a video conference hearing.

    b. Docket Nos. 225-2 (Dr. van Schoor's expert report, including all exhibits attached thereto) and Doc. 225-3 (Dr. Schrum's expert report, including all exhibits attached thereto) shall *not* remain under seal. Within ten days of entry of this Order, Plaintiff shall file in the public record said reports, with their exhibits, in unredacted form as part of the Joint Appendix.

3. The Motion to Seal—Docket No. 259 is **DENIED**. Within ten days of entry of this Order, Plaintiff shall file in the public record Docket No. 258 and all attachments thereto as part of the Supplemental Joint Appendix.

4. Plaintiff's Motion to Unseal [Doc. 285] is **GRANTED** in part and **DENIED** in part as set forth in this Order.

**IT IS SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

13